# EXHIBIT A

# Northern California Construction Agreement

624919

Contractor's License No.

Operating Engineers Local Union No. 3 proposes the following collective bargaining agreement to:

WIMMER EXCAVATING

Individual Employer (Company Name)    707 683-9915

7857 Meridian Rd.    Dixon    CA    95620

Address    City    State    Zip    Telephone Number

## SECTION NO. 1 — DEFINITIONS, COVERAGE, RECOGNITION

1. **Union.** The term "Union" as used herein shall mean OPERATING ENGINEERS LOCAL UNION NO. 3 of the International Union of Operating Engineers, AFL-CIO.

2. **Employer.** The term "Employee" as used herein shall mean any person, without regard to race, color, religion, sex, age, national origin, handicap or disability:

(a) whose work for an Individual Employer in the area covered by this Agreement falls within the recognized jurisdiction of the Union, or

(b) who operates, monitors and controls, maintains, repairs, modifies, assembles, erects, services or each or all of them, power-operated equipment, of the type or kind of power-operated equipment used in the performance of work referred to in (a) above, regardless of whether such power-operated equipment is mechanically, electrically or electronically, hydraulically, automatically or remotely controlled, and

(c) who assists or helps in the operation, maintenance, repairing or assembling, erecting or servicing of such power-operated equipment of the type or kind of equipment used in the performance of work referred to in (a) above, and who qualifies to register in a Job Placement Center, provided that the foregoing shall not apply to superintendents, assistant superintendents, general foremen, foremen, timekeepers, messenger boys, guards, confidential employees, office help, inspectors, and person specifically excluded elsewhere in this Agreement.

3. This Agreement shall cover and apply to all activities of the Individual Employer in the area covered by this Agreement falling within the Union's recognized jurisdiction, including, but not limited to inference or otherwise, to building construction, demolition, site clearing, pipelines, oil or gas refineries (excluding the felling and removal of merchantable timber by the purchaser of the merchantable timber), work covered by Section 13.00.00, Steel Fabricators and Erectors, which work and equipment shall be covered by Section 13.00.00, Steel Fabricators and Erectors, and work covered by Section 14.00.00, Piledriving, which work and equipment shall be covered by Section 14.00.00, Piledriving. It shall also apply to all maintenance, modification and repair work and facilities, on-site or off-site, of the Individual Employer in the area covered by this Agreement, except an off-site repair or maintenance facility with respect to which the Individual Employer is in a bona fide collective bargaining relationship with a labor organization covering such Individual Employer's off-site maintenance and repair facility at the time the Individual Employer becomes a party to, or covered by, this Agreement.

4. This Agreement shall cover and apply to all Employees.

5. **Coverage.** This Agreement shall cover and apply to Northern California, which term means that portion of the State of California above the northerly boundary of Kern County, the northerly boundary of San Luis Obispo County, and the westerly boundaries of Inyo and Mono Counties.

6. Because employees in the construction industry frequently work for many different Individual Employers in the course of any given twelve-month-period, and because of the broad community of interest which this cross-flow of employees creates, particularly through the operation of the Job Placement Regulations, the Union, the Individual Employer and all Individual Employers bound by terms and provisions of this Agreement recognize that all Employees who perform work historically, or which may hereafter come, within the Union's jurisdiction are members of a single industry-wide multi-employer unit of Employees.

7. If the Individual Employer forms or participates in a corporation, association, partnership, joint venture or firm for the purpose of performing work covered by this Agreement and which is controlled directly or indirectly by the Individual Employer, the Individual Employer shall notify the Union in writing the day following the formation or participation of the name and address of such entity. If the Individual Employer fails to give such notification it will pay into the Operating Engineers' Pension Trust Fund an amount not to exceed the wages, straight time and overtime, and fringe benefits that it would have paid if it had performed the work, plus twenty-five percent (25%) of the total amount not as a penalty but by way of liquidated damages.

8. The parties hereby waive any right that they may have to repudiate this Agreement during the term of the Agreement or during the term of any extension, modification or amendment to this Agreement.

9. Based on a sufficient showing of interest, the Individual Employer recognizes and acknowledges OPERATING ENGINEERS LOCAL UNION NO. 3 of the International Union of Operating Engineers, AFL-CIO, as the exclusive Section 9(a) collective bargaining representative of all Employees covered by this Agreement.

10. If the Individual Employer sells or transfers any or all of its assets, stock and/or operations, it will pay all fringe benefits including contributions, liquidated damages, interest and collection costs, including, but not limited to, attorney's fees and auditor/accountant fees it owes prior to the sale or transfer. If the Individual Employer sells or transfers any or all of its assets, stock, and/or operations, it will provide as a

term of the sale or transfer that the buyer or transferee shall recognize the Union as the Employees' bargaining agent and will assume this Agreement.

11. The Individual Employer will execute a promissory note which shall name as beneficiaries, the Trust Funds and Fringe Benefit Plans provided for in the Master Agreement if it files a bankruptcy petition (any chapter) or if any of its creditors file and involuntary bankruptcy petition (any chapter). The promissory note shall provide for the full payment of fringe benefits, including contributions, liquidated damages, interest and collection costs including, but not limited to, attorney's fees and auditor/accountant fees.

12. If the Individual Employer is a corporation, it's principal shareholder(s) personally guarantee all payment of wages and fringe benefits, including fringe benefit contributions, liquidated damages, interest and collection costs, including, but not limited to, attorney's fees and auditor/accountant fees.

## SECTION NO. 2 — MASTER AGREEMENTS INCORPORATED

All of the provisions of the current Master Agreement between the Union and the Associated General Contractors of California, Inc. ("AGC"), including the Job Placement Regulations and any amendment or amendments thereto excluding 02.08.04, 02.08.05, 18.03.04, 26.01.00, 26.01.01 and 26.03.00, which are specifically excluded from this Agreement, are incorporated herein as if set forth in full herein. Provided, however, that with respect to 19.00.00 of the Master Agreement, any decision under 19.00.00 involving the meaning of the Agreement resulting in the amendment of that Agreement, shall control, and shall be given full effect under this Agreement.

## SECTION NO. 3 — DISPUTES

Settlement of any dispute under this Agreement shall be in accordance with Grievance/Arbitration Section of the current Master Agreement unless the Union elects to engage in economic action, in which case, the Grievance/Arbitration section shall not be effective as to the specific dispute. The Union may not engage in economic action over disputes concerning any subcontracting provision of the Master Agreement. If the Union does invoke the dispute resolution procedure set forth in the Master Agreement, the Individual Employer may arrange for its own Board of Adjustment panel or may use the State Board provided for in the Grievance/Arbitration Section of the Master Agreement.

## SECTION NO. 4 — INFORMATION

For the information and convenience of the parties, the substance of certain provisions of the Master Agreement incorporated by reference are reproduced as an Appendix which is attached hereto.

## SECTION NO. 5 — EFFECTIVE AND TERMINATION DATES

This Agreement shall, if a renewal Agreement, be retroactive to the effective date of the current Master Agreement, and if not a renewal Agreement, shall be effective the day following the signing of this Agreement. The Individual Employer agrees to be bound to the wages, hours and all other terms and conditions of future Master Agreements and any amendment(s) thereto; provided, however, that in the event either party desires to terminate this Agreement, they may do so during the period of sixty (60) to ninety (90) days prior to the expiration of any Master Agreement.

Receipt of copies of the current Master Agreement and amendments to date, and of the other agreements incorporated by reference therein, is hereby acknowledged by the Individual Employer by acceptance of this Agreement.

OPERATING ENGINEERS LOCAL UNION NO. 3
of the International Union of Operating Engineers, AFL-CIO

/s/ Jerry Bennett, President

/s/ Robert L. Wise, Recording-Corresponding Secretary

/s/ Donald R. Doser, Business Manager

/s/ Business Representative

Agent No. 4150

If this proposed Agreement is satisfactory, please sign accepting the same at the place provided below:

Accepted this 25 day of June , 1999

Individual Employer's Name and Title

05/25/99- hc
opeiu-3-afl-cio (3)

TO:
**OPERATING ENGINEERS LOCAL UNION NO. 3**
**1620 South Loop Road, Alameda, CA 94502**

RE: Order to Bill Employer Account for Negotiated Trusts

*You are instructed to bill the following Employer as specified below for payments due the Trust Funds under the provisions of the Collective Bargaining Agreement:*

Company Name: WIMMER EXCAVATING

Responsible Officer, Partner, etc.: TERRY WIMMER

Location: DIXON

Address (for billing): 7657 MERIDIAN Rd N.

City, State, Zip: DIXON CA 95620

No. of Engineers PRESENTLY employed (do not include owner): 6

Commence billing for work performed: JUNE

This Contract is NEW ☑         Or a Renewal ☐

☐ Individual      ☐ Partnership          ☐ Corporation
                  ☐ California            ☐ California
                  ☐ Other                ☐ Foreign

Certified  ☐ MBE ☐ DBE ☐ WBE ☐ DVBE
☐ Yes, I am an Owner-Operator

The Individual Employer shall have the option of paying the contribution rate required under Section 12.08.00, Contract Administration Fund, to the Associated General Contractors of California, Inc., the Association of Engineering Construction Employers or the Engineering & Utility Contractors Association. This Fund shall be utilized by the Employer(s) to process grievances on behalf of Individual Employers. If the Individual Employer does not wish to utilize either of their services in the processing of grievances, the contribution rate shall be paid into the Pensioned Health and Welfare Trust Fund.

*12.08.00   Contract Administration Fund*                    *Indicate your choice.*

AGC ☐
AECE ☐
EUCA ☐
Pensioned Health & Welfare ☑

# EXHIBIT B







Skip to: CSLB Home | Content | Footer | Accessibility

Department of Consumer Affairs

## Contractors State License Board

Search CSLB

| 01 CONSUMERS | 02 CONTRACTORS | 03 APPLICANTS | 04 JOURNEYMEN | 05 PUBLIC WORKS | 06 BUILDING OFFICIALS | 07 GENERAL INFO |

### WHAT YOU CAN DO

About CSLB

CSLB Newsroom

Board and Committee Meetings

Disaster Information Center

CSLB Library

Frequently Asked Questions

Online Services

* Check A License or HIS Registration

* Filing a Construction Complaint

* Processing Times

* Check Application Status

* Search for a Surety Bond Insurance Company

* Search for a Workers' Compensation Company

How to Participate

## CONTRACTOR'S LICENSE DETAIL

⚠️ **DISCLAIMER: A license status check provides information taken from the CSLB license database. Before relying on this information, you should be aware of the following limitations.**

* CSLB complaint disclosure is restricted by law (B&P 7124.6). If this entity is subject to public complaint disclosure, a link for complaint disclosure will appear below. Click on the link or button to obtain complaint and/or legal action information.

* Per B&P 7071.17, only construction related civil judgments reported to the CSLB are disclosed.

* Arbitrations are not listed unless the contractor fails to comply with the terms of the arbitration.

* Due to workload, there may be relevant information that has not yet been entered onto the Board's license database.

| License Number: | 624919 | | Extract Date: 08/05/2008 |
| --- | --- | --- | --- |
| **Business Information:** | WIMMER GENERAL ENGINEERING | | |
| | 7560 ELIZABETH RD | | |
| | VACAVILLE, CA 95688 | | |
| | Business Phone Number: (707) 452-0152 | | |
| **Entity:** | Sole Ownership | | |
| **Issue Date:** | 08/14/1991 | | |
| **Expire Date:** | 08/31/2009 | | |
| **License Status:** | This license is current and active. All information below should be reviewed. | | |

| Classifications: | CLASS | DESCRIPTION |
| --- | --- | --- |
| | A | GENERAL ENGINEERING CONTRACTOR |

**Bonding:** CONTRACTOR'S BOND

Check A License: Contractor's License Detail

Page 2 of 2

This license files Contractor's Cash Deposit **T1571L2** in the amount of **$12,500** on file with CSLB.

**Effective Date:** 01/01/2007

Contractor's Bonding History

| **Workers'** | |
| **Compensation:** | This license has workers compensation insurance with the DELOS INSURANCE COMPANY |

**Policy Number:** 02DKRM12000384

**Effective Date:** 06/13/2008

**Expire Date:** 06/13/2009

Workers' Compensation History

Personnel listed on this license (current or disassociated) are listed on other licenses.



Consumers | Contractors | Applicants | Journeymen | Public Works | Building Officials | General Info
CSLB Home | Conditions of Use | Privacy | Contact CSLB

Copyright © 2007 State of California

8/5/2008



Skip to: CSLB Home | Content | Footer | Accessibility          Search CSLB

Department of Consumer Affairs
**Contractors State License Board**

| 01 CONSUMERS | 02 CONTRACTORS | 03 APPLICANTS | 04 JOURNEYMEN | 05 PUBLIC WORKS | 06 BUILDING OFFICIALS | 07 GENERAL INFO |

CONTRACTOR LICENSE PERSONNEL LIST

**WHAT YOU CAN DO**

About CSLB

CSLB Newsroom

Board and Committee Meetings

Disaster Information Center

CSLB Library

Frequently Asked Questions

Online Services

- Check A License or HIS Registration

- Filing a Construction Complaint

- Processing Times

- Check Application Status

- Search for a Surety Bond Insurance Company

- Search for a Workers' Compensation Company

How to Participate

<< Return to License Detail

**Contractor License #:** 624919

Click on the person's name to see a more detailed page of information on that person.

| NAME | TITLE | ASSOCIATION DATE | DISASSOCIATION DATE | CLASS | MORE CLASS |
|------|-------|------------------|---------------------|-------|------------|
| TERRENCE WAYNE WIMMER | SOLE OWNER | 08/14/1991 | | A | More |

Consumers | Contractors | Applicants | Journeymen | Public Works | Building Officials | General Info
CSLB Home | Conditions of Use | Privacy | Contact CSLB

Copyright © 2007 State of California



Skip to: CSLB Home | Content | Footer | Accessibility    [Search CSLB] 



Department of Consumer Affairs

# Contractors State License Board

| 01 CONSUMERS | 02 CONTRACTORS | 03 CONTRACTOR'S LICENSE DETAIL | 04 | 05 PUBLIC WORKS | 06 BUILDING OFFICIALS | 07 GENERAL INFO |

## WHAT YOU CAN DO

About CSLB

CSLB Newsroom

Board and Committee Meetings

Disaster Information Center

CSLB Library

Frequently Asked Questions

**Online Services**

- Check A License or HIS Registration
- Filing a Construction Complaint
- Processing Times
- Check Application Status
- Search for a Surety Bond Insurance Company
- Search for a Workers' Compensation Company

How to Participate

⚠️ **DISCLAIMER: A license status check provides information taken from the CSLB license database. Before relying on this information, you should be aware of the following limitations.**

- CSLB complaint disclosure is restricted by law (B&P 7124.6). If this entity is subject to public complaint disclosure, a link for complaint disclosure will appear below. Click on the link or button to obtain complaint and/or legal action information.
- Per B&P 7071.17, only construction related civil judgments reported to the CSLB are disclosed.
- Arbitrations are not listed unless the contractor fails to comply with the terms of the arbitration.
- Due to workload, there may be relevant information that has not yet been entered onto the Board's license database.

| License Number: | 909716 | Extract Date: 08/07/2008 |
|---|---|---|
| Business Infomation: | WIMMER INC | |
| | 419 MASON STREET SUITE 207 | |
| | VACAVILLE, CA 95688 | |
| | Business Phone Number: (707) 452-0152 | |
| Entity: | Corporation | |
| Issue Date: | 01/29/2008 | |
| Expire Date: | 01/31/2010 | |
| License Status: | This license is current and active. **All information below should be reviewed.** | |

| Classifications: | CLASS | DESCRIPTION |
|---|---|---|
| | A | GENERAL ENGINEERING CONTRACTOR |

| Bonding: | **CONTRACTOR'S BOND** |
|---|---|
| | This license filed Contractor's Bond number **790409C** in the amount of **$12,500** with the bonding company DEVELOPERS SURETY AND INDEMNITY COMPANY. |
| | **Effective Date: 12/19/2007** |
| | **BOND OF QUALIFYING INDIVIDUAL** |
| | 1.  The Responsible Managing Officer (RMO) TERRENCE WAYNE WIMMER certified that he/she owns 10 percent or more of the voting stock/equity of the corporation. A bond of qualifying individual is **not** required. |
| | **Effective Date: 01/29/2008** |

| Workers' Compensation: | This license is exempt from having workers compensation insurance; they certified that they have no employees at this time. |
|---|---|
| | **Effective Date: 01/15/2008** |
| | **Expire Date: None** |

Personnel listed on this license (current or disassociated) are listed on other licenses.





Skip to: CSLB Home | Content | Footer | Accessibility

Search CSLB 



## Department of Consumer Affairs
# Contractors State License Board

| 01 CONSUMERS | 02 CONTRACTORS | 03 | 04 | 05 | 06 BUILDING OFFICIALS | 07 GENERAL INFO |

**WHAT YOU CAN DO**

About CSLB

CSLB Newsroom

Board and Committee
Meetings

Disaster Information
Center

CSLB Library

Frequently Asked
Questions

Online Services

- Check A License or
  HIS Registration
- Filing a Construction
  Complaint
- Processing Times
- Check Application
  Status
- Search for a Surety
  Bond Insurance
  Company
- Search for a Workers'
  Compensation
  Company

How to Participate

<< Return to License Detail

**Contractor License #:** 909716

Click on the person's name to see a more detailed page of information on that person.

| NAME | TITLE | ASSOCIATION DATE | DISASSOCIATION DATE | CLASS | MORE CLASS |
|------|-------|------------------|---------------------|-------|------------|
| STEPHEN ALLEN WIMMER | OFFICER | 01/29/2008 | | | |
| TERRENCE WAYNE WIMMER | RMO/CEO/PRES | 01/29/2008 | | A | |
| NATANE MARIE WIMMER | OFFICER | 01/29/2008 | | | |
| TERRA LYNN WIMMER | OFFICER | 01/29/2008 | | | |

Consumers | Contractors | Applicants | Journeymen | Public Works | Building Officials | General Info
CSLB Home | Conditions of Use | Privacy | Contact CSLB

Copyright © 2007 State of California

# EXHIBIT C

# 1998 - 2002
## MASTER AGREEMENT
### for
## NORTHERN CALIFORNIA
### between
## ASSOCIATED GENERAL CONTRACTORS
## OF CALIFORNIA, INC.
### and
## LOCAL UNION NO. 3
### of the International Union
### of Operating Engineers, AFL-CIO

*THIS AGREEMENT,* made and entered into this   16th day of June, 1998, by and between the ASSOCIATED GENERAL CONTRACTORS OF CALIFORNIA, INC. ("Employer") and OPERATING ENGINEERS LOCAL UNION NO. 3 of the International Union of Operating Engineers, AFL-CIO ("Union").

**01.00.00**   *EMPLOYEES, CLASSIFICATIONS, MANNING, AND WAGE RATES*

**01.01.00**   On all work covered by this Agreement (Section 02.05.00) when performed, and in all instances in which equipment used in the performance of work covered by this Agreement is operated, regardless of when the work was bid or let, such work shall be performed and such equipment shall be operated by Employees obtained in accordance with Section 04.00.00 and the Job Placement Regulations of this Agreement and they and each of them shall be employed in the classifications and at the wage scales as follows, including such additions as may be made in accordance with Section 20.00.00.

**01.01.01**   Notwithstanding any provisions of this Section 01.00.00 relating to manning, any piece of equipment involved in excavation for which no employee is setting line or grade, or performing work which historically has been performed by Assistant to Engineers, an Assistant Engineer shall not be required. If assistance is necessary, such assistance shall be performed by an Assistant to Engineer. In the event a violation is alleged, and a dispute exists which cannot be resolved between the Employer and the Union, any Individual Employer found to be in violation of this Section 01.01.01 by a Board of Adjustment shall forfeit the application of this Section on *ALL* said Individual Employer's jobs or projects for the period of time and in the manner prescribed hereunder:

(1)  *First (1st) Violation:* Said Section shall not apply for a period of three (3) consecutive months from the date said Individual Employer is found in violation by said Board of Adjustment and *manning* all Individual Employer's jobs or projects shall be in accordance with the requirements of Section 01.03.00 *Classifications, Manning and Rates;*

(2)  *Second (2nd) Violation:* Same application as in (1) above for a period of six (6) consecutive months;

(3)  *Third (3rd) Violation:* Same application as in (1) and (2) above for the duration of the Agreement.

*NOTE:* This Section shall not apply to any traditional crane work and any manning requirements on crane work shall be in accordance with Section 01.03.01.

**01.02.00**   *Area Definitions.* Section 24.00.00 provides a description of Areas 1 and 2 based upon Township and Range Lines. The Area 2 wage, as set forth in Section 01.03.00, shall be paid in all areas of Northern California not included in Area 1.

**01.02.01**   If all compensable time is spent by any Employee in Area 1, he shall be paid the Area 1 rate.

**01.02.02**   If two (2) or more hours of compensable time (straight or overtime) on any shift are spent by an Employee in Area 2, he shall be paid the Area 2 rate for the entire day.



Dock Builders, the Union shall not recognize it. The Heavy and Highway Committee shall approve or disapprove the picket or picketing within twenty-four (24) hours of notification by the Individual Employer, during which period of the time, the Employees covered by this Agreement shall continue to work. This provision shall not apply to a jurisdictional picket line. However, an Employee of an Individual Employer who refuses to report to the job or project of an Individual Employer and perform his work for the Individual Employer when directed so to do by the Union under the provisions of 03.07.01 may be discharged by his Individual Employer. Such discharged Employee may register in any Job Placement Center, but he shall be ineligible for dispatch until the sixtieth (60th) day after the date of his discharge.

**04.04.00** *Owner-Operator.* Whenever "Owner-Operator" is used in this Section, it means Operating Engineer Equipment Operator-Employee only, and does not apply to a Heavy Duty Repairman/Welder or a Lubrication and Service Engineer or equipment (generators, welding machines, fixed drills, lathes, pickup trucks, grease trucks, lube trucks or trucks and trailers) used by them or either of them and necessary or advisable for the performance of any work of a Heavy Duty Repairman/Welder or Lubrication and Service Engineer. With respect to the classifications and equipment above excluded from this Owner-Operator clause, no such equipment shall be used on any job or project if such equipment is owned, rented, or leased by the Employee using such equipment or by a member of his immediate family.

**04.04.01** This Section shall only apply to an Owner-Operator who has legal or equitable title to his or her equipment and who personally operates that equipment in the performance of his or her work.

**04.04.02** This Section shall not apply to any other form of business entity, partnerships, limited partnerships, corporations, joint ventures, etc.

**04.04.03** Any other business entity shall be subject to Section 05.00.00 *APPLICATION TO SUBCONTRACTORS.*

**04.04.04** Any Owner-Operator who is a member of the Union in good standing and who possesses a valid contractor's license shall have the option of electing, in writing, not to be placed on the Individual Employer's payroll. If the Owner-Operator elects not to go on the payroll, the Individual Employer shall pay into the Pensioned Health and Welfare and Affirmative Action Trust Funds at the required contribution rates. The Individual Employer shall notify the Union of the option selected. Each of the Funds agrees to defend the legality of this Subsection in any action to which it is a party. Each of the parties to this Agreement specifically agrees to join in the defense of any action brought by any person or entity claiming that this Subsection is unlawful.

**04.04.05** Any Owner-Operator who is not a member in good standing of the Union shall be on the payroll of the Individual Employer with full fringes being paid from the first (1st) day of employment.

**04.04.06** The Individual Employer may not circumvent the provisions of this Section by utilizing Section 05.00.00, *APPLICATION TO SUBCONTRACTORS* to subcontract to operators of individually-owned and manned pieces of equipment. In the event that occurs, the Individual Employer shall be liable for full fringes plus twenty-five percent (25%).

**04.04.07** Owner-Operators shall not be subject to the provisions of Sections 04.06.00 through 04.12.00 or be considered an Employee for the purposes of 04.10.24[ii] of the Job Placement Regulations of this Agreement, provided the Job Placement Center servicing the job or project shall be notified of the name, address and Social Security Number of the Owner-Operator within twenty-four (24) hours after the Owner-Operator reports for work regardless of how long he works.

**04.04.08** In the event an Individual Employer has failed to notify the Job Placement Center servicing the job or project of the name, address and Social Security Number of the Owner-Operator within twenty-four (24) hours after the Owner-Operator has reported for work to said Individual Employer, and said Individual Employer is subsequently found by audit or otherwise to have violated any of the Owner-Operator provisions of Section 04.00.00 resulting in the failure to pay wages and/or fringes under this Agreement, such Individual Employer's liability under Section 18.04.00 shall be for the payment of an amount equal to the wages, straight time and overtime, and fringe benefits that would have been paid by the Individual Employer but for the violation plus twenty-five percent (25%).

Such liability shall be for not more than the sixty (60) -day period prior to written notification by the Union to the Individual Employer and Employer notwithstanding any other provision of said Section 18.04.00. Provided, however, if said Individual Employer can establish from records maintained in the normal course of business that the Job Placement Center has received the required twenty-four (24) -hour notice and is subsequently found to be in violation, the Individual Employer's liability for payment under Section 18.04.00 shall be limited to fringe benefits only for not more than the sixty (60) -day period prior to written notification by the Union to the Individual Employer and the Employer. Of the liquidated damages provided for in this Section, an amount equal to the amount of the fringe benefits, if any, that should have been paid but were not, shall be credited to the Owner-Operator; the balance shall be paid into the Operating Engineers' Pre-Apprentice, Apprentice and Journeyman Affirmative Action Training Fund.

*04.04.09* The Individual Employer who utilizes an Owner-Operator shall provide, upon the request of any authorized agent of the Union, copies or original records made reflecting the hours worked, equipment used, and payments made by the Individual Employer to the Owner-Operator and on the Owner-Operator's behalf.

*4.04.10* The Individual Employer expressly reserves the right to control the details of the manner, time and means by which the Owner-Operator performs his services, as well as the ends to be accomplished, and shall be the sole judge of the capability of the Owner-Operator's equipment to perform the work required to be performed, and may, if the Individual Employer determined that the Owner-Operator's equipment is not capable of performing the work required to be performed, terminate such Owner-Operator's services. Failure to work the day or half-day out as directed shall terminate the Owner-Operator's employment, and he shall be paid only for actual time worked prior to such failure. The Individual Employer shall not pay for time spent by the Owner-Operator in repairing, servicing or maintaining his equipment after termination of employment, or before or after his shift, as the case may be.

*04.04.11* Any Owner-Operator who employs Operating Engineers under a subcontract with an Individual Employer signatory to a collective bargaining agreement with the Union shall comply with the terms of Section 05.00.00.

*04.04.12* If an Owner-Operator who meets the criteria set forth in 04.04.04 above elects not to go on the payroll of the Individual Employer, the parties agree that the Owner-Operator shall be compensated in an amount equal to the total hourly compensation rate that would have been paid an Employee of the Individual Employer performing similar work plus a reasonable rate for rental of the Owner-Operator's equipment. For the purpose of this provision, the total hourly compensation rate referenced above shall include the applicable wage rate plus the amount that would have been contributed on an Employee's behalf to the Pension Trust Fund, Health and Welfare Trust Fund and Vacation and Holiday Pay Plan.

*04.04.13* Any Owner-Operator who has elected to go on the payroll of the Individual Employer shall be governed by the terms of this Agreement as written, and each such Owner-Operator must specifically waive any claim of exemption from any provision of said Agreement based upon an assertion of independent contractor status. Any Owner-Operator member who elects to not go on the payroll must waive any claim of Employee status and rights under 29 United States Code 157.

*04.04.14* Compensation for the equipment shall be by check for the full amount due, less any agreed advances. A statement of any charges by the Individual Employer shall be issued at the same time.

*04.04.15* The Owner-Operator shall provide and have sole responsibility for fuel, oil, grease, tires, tubes, repairs, and any other items necessary to operate his equipment. He shall have complete freedom to purchase any such items at any place where efficient service and satisfactory products can be obtained at the most favorable prices.

*04.04.16* There shall be no interest or handling charge on earned money advanced prior to the regular payday.

*04.04.17* The provisions of this Section have been negotiated and agreed upon by and between the parties for the objects and purposes expressed in 04.04.19. The parties have not undertaken to negotiate for the Owner-Operator-Employees any profit whatsoever for the leasing and rental of the equipment they operate. On the contrary, compensation for the equipment shall be set by agreement between the Individual Employer and the Owner-Operator at a

# EXHIBIT D

projects where the estimated or agreed price to be paid to the Individual Employer is $3,000,000.00 or more. If the Individual Employer conducts a Pre-Job Conference with any other basic craft for a job or project of less than $3,000,000.00, it will notify the Union and the Union may participate in the Pre-Job Conference.

**03.01.01** Upon request of the Union, a Pre-Job Conference shall be held. The location shall be at the option of the Employer or Individual Employer. In the event a Pre-Job Conference is not held within two (2) weeks after a written request to the Individual Employer from the Union, Section 18.03.00 shall not be in effect until such Pre-Job Conference is held.

**03.01.02** All understandings reached at such Pre-Job Conference shall be reduced to writing in a Pre-Job Conference Report and signed by the Individual Employer or Employer and the Union. Such understandings shall be within the scope and terms of this Agreement. For Keymen, refer to 04.08.02 of the Job Placement Regulations.

**03.02.00** *Records and Requests.* Each Individual Employer shall provide a proper means for registering time, working time and quitting time of its Employees and owner-operators. In the event of a specific dispute regarding time, wages or fringe benefit payments of its Employees, or over any matter pertaining to an owner-operator, upon written request by the Union, delivered to the Employer and the Individual Employer, the Individual Employer's records relating to said dispute regarding time, wages and fringe benefit payments of its Employees, regardless of classification, or a dispute regarding owner-operators, and the Individual Employer's records relating to said dispute shall promptly be accessible to a Business Representative, auditor or other official of the Union during working hours.

**03.02.01** In the event the Employer disputes the relevance of the records regarding a specific dispute referred to in 03.02.00 above, said dispute shall be subject to the provisions of Section 18.00.00.

**03.02.02** In the event an Individual Employer fails or refuses to confirm an audit appointment within fourteen (14) days following demand or fails or refuses to submit to an audit within thirty (30) days upon demand, the Union shall not be bound by the provisions of Section 18.00.00 and shall be free to withdraw any or all of the Employees of such Individual Employer and such withdrawal shall not be a violation of this Agreement. Provided, however, the Union shall not withdraw Employees for forty-eight (48) hours after written notification to the Employer of the failure to confirm an audit appointment or the failure to submit to an audit whichever the case shall be, and the Individual Employer shall bear the expenses incurred by the auditor for such forty-eight (48) -hour delay.

**03.02.03** Upon written request of the Union, the Individual Employer shall notify the Union of his intent to perform work on Saturday, Sunday, or a holiday, of the location of job and the number of Employees he intends to employ.

**03.03.00** *Employee Termination.* The Individual Employer shall notify the Job Placement Center on a form supplied by the Job Placement Center of the names of all Employees who have quit or who have been terminated during the week. (Termination shall mean severance of employment and not temporary layoff.) Such form is to be mailed to the Job Placement Center servicing the job or project not later than Monday of the week following the week of such severance of employment. The Union shall notify the Employer in writing each time any Individual Employer fails to make such report. Any Individual Employer failing to make such report three (3) times in one (1) calendar year shall for such failure to report pay one hundred dollars ($100) into the Operating Engineers and Participating Employers Pre-Apprentice, Apprentice, and Journeyman Affirmative Action Training Fund and one hundred dollars ($100) for each additional failure. In the event an Employee is terminated, the Individual Employer shall indicate on the discharge slip the reasons for discharge, i.e., reduction in force, not qualified, termination of job, etc.

**03.03.01** *Employee Transfer.* No Employee may be transferred from an Individual Employer's payroll to another Individual Employer's payroll, except in accordance with the Job Placement Regulations.

**03.04.00** *Conflicting Contracts.* Any oral or written agreements between any Employer, any signatory Association, or any Individual Employer, and an Employee which conflicts, or is inconsistent with this Agreement or any supplemental Agreement hereto, or which disestablishes, or tends to disestablish the relationship of Employer,

20

EXHIBIT D

# EXHIBIT E

such Trust has from time to time been determined, upon the day immediately following the date on which the Individual Employer becomes delinquent, and shall be added to and become a part of said amount due and unpaid, and the whole thereof shall bear interest at the rate of twelve percent (12%) per annum until paid.

*12.13.01*    In addition, if a delinquent Individual Employer agrees to pay his delinquency in installments and fails to make such payments in the amount and at the time and place agreed, it is agreed that the amount of damage to each Trust resulting from any such failure shall be by way of liquidated damages and not as a penalty to each such Trust, the sum of thirty-five dollars ($35.00) or fifteen percent (15%) of the amount due and unpaid to each such Trust, whichever is greater, for each such failure to pay in full within the time provided, which amount shall become due and payable to each such Trust in Alameda, California, at the place and time agreed upon, and shall be added to and become a part of said amount due and unpaid, and the whole thereof shall bear interest at the rate of twelve percent (12%) per annum until paid.

*12.13.02*    If any Individual Employer defaults in the making of such payments and if either the Union, the Trusts or the plan, or any of them, consults or causes to be consulted legal counsel with respect thereto, or files or causes to be filed any suit or claim with respect thereto, there shall be added to the obligation of the Employer who is in default all reasonable expenses incurred by the Union and the Trust in the collection of same, including but not limited to, reasonable attorneys' fees, auditors' and accountants' fees, court costs and all other reasonable expenses incurred in connection with such suit or claim including any appellate proceedings therein.

*12.13.03*    When a contributing Individual Employer has been assessed liquidated damages and interest for a period of two (2) late months during any twelve (12) consecutive month period, upon the occurrence of the second (2nd) assessment the Individual Employer will promptly be notified (with copies to the Local Union and the Employer) that if said Individual Employer becomes delinquent again and is assessed liquidated damages and interest during any of the succeeding twelve (12) -month period, he will be subject to the following rules:

(a) The Individual Employer shall be audited in order to determine compliance with the provisions of this Section 12.00.00 and/or the Trust Fund Documents.

(b) The Individual Employer shall be required to provide the Trust Funds with a cash deposit or bond equal to the sum of the three (3) highest months' contributions made in the immediate preceding twelve (12) -month period, or such lesser sum as the Delinquency Committee deems appropriate.

(c) The Individual Employer's due and delinquent date shall be the 15th day of the month.

(d) Once these special rules have been applied to an Individual Employer, they shall remain in effect for at least twelve (12) months. At the end of this period, the Individual Employer may petition the Board to terminate these special rules and release the cash deposit or bond; this may be allowed only if the Individual Employer has been current in his reports and contributions for each and every month during the preceding twelve (12) -month period and the Board is otherwise satisfied that there will be no further delinquencies. The foregoing rules shall not actually be applied to any Individual Employer until the Delinquency Committee has been advised at a meeting that they have become applicable (or will become applicable if another delinquency occurs). The Delinquency Committee may then, upon its own motion or upon the Individual Employer's request, waive any of the above rules, in whole or in part, for reasonable cause.

*12.13.04*    The parties recognize and agree:

(a) that the references to fringe benefits in Sections 7071.5 and 7071.11 of the California Business and Professions Code include payments for fringe benefits and vacation and holiday pay as described in this Agreement and Trust Agreements creating each Trust;

(b) that said payments are for the benefit of the Employees of each Individual Employer covered by this Agreement, and that the failure of an Individual Employer to make said payments, in the manner and at the time prescribed, causes damage to all Employees, including the Employees of the Individual Employer in default, in the amount of the unpaid fringe benefits and vacation and holiday pay as well as the liquidated damages established herein,

EXHIBIT E

# EXHIBIT F

(Revised 1975)

# Pension Trust Fund for Operating Engineers

# TRUST AGREEMENT

EXHIBIT F

2500 · 8/78

Section 4. The Board of Trustees shall provide at the expense of the Fund, where and to the extent permissible by applicable law, insurance and bonding protection for the Fund and for each Trustee, former Trustee or estate of a deceased Trustee or former Trustee, and all other persons who handle funds or other property of the Fund for any purpose whatsoever. The protection shall be from such companies as the Board shall determine.

(As Amended July 1, 1975)

Section 5. All checks, drafts, vouchers, or other withdrawals of money from this Fund shall be signed by a person or persons authorized so to do by the Board of Trustees.

Section 6. The Board of Trustees shall maintain suitable and adequate records of and for the administration of this Fund and the Pension Plan. The Board can require the Employer, any Signatory Association, any Contributing Employer, the Union, any other Labor Organization, or any Covered Employee, Retired Employee or other beneficiary of the Plan to submit to it any information, data, report, or documents reasonably relevant to and suitable for the purposes of such administration; provided, however, the Union or other Labor Organization cannot be required to submit a list of its members. Reasonable cause appearing therefor upon notice in writing from the Board, a Contributing Employer must permit a certified public accountant appointed by the Board to enter upon the premises of such employer during business hours, at all reasonable time or times, and to examine and copy such books, records, papers or reports of such Contributing Employer as may be necessary to determine whether such Contributing Employer is making full and prompt payment of all sums required to be paid by him or it to this Fund.

22

Section 7. The books of account and records of the Board of Trustees, including the books of account and records pertaining to the Fund shall be audited at least once a year by an independent qualified public accountant engaged by the Board on behalf of all Plan participants who shall conduct such an examination of any financial statements of the Fund and the Pension Plan, and of other books and records of the Fund and Pension Plan, as is required by ERISA. The Board shall also make all other reports required by law. A statement of the results of the annual audit shall be available for inspection by interested persons at the principal office of the Fund and at such other suitable place as the Board may designate from time to time. Copies of such statement shall be delivered to the Employer, the Union and each Trustee within ten days after the statement is prepared.

(As Amended December 31, 1975)

Section 8. No Covered Employee, no Retired Employee, and no beneficiary shall be discriminated against by the Board of Trustees in any way by reason of membership or non-membership in any union or by reason of activity on behalf of or in opposition to any union, provided, however, for administrative purposes only membership in the Union may be included among other evidence as prima facie proof of employment or availability for employment.

## ARTICLE V
## PROCEDURE OF BOARD OF TRUSTEES

Section 1. The Board of Trustees shall determine the time and place of its regular periodic meetings. Either the Chairman or the Co-Chairman or one-third

23

# *EXHIBIT G-1*

```
[ERS01D3<     E M P L O Y E R   S Y S T E M   I N Q U I R Y THOLLOWAY     08/07/08
02.016              FUNCTION  PLAN   EMPR-NBR  SEQ  START  PAGING PAGE     14:01:16
NEXT-REQUEST :   >ERLIST <   |021<  |092546<  |T< >04/07< >+   <    17
CURR-REQUEST :   >ERLIST <   [021<  [092546<  [T<
```

EMPLOYER :  WIMMER EXCAVATING                          CNTC: 24 NCA SHRT FRM

| YTD DUE | 142899.20 | YTD PD | 52331.80 | CURRAR | 90567.40 | LCL: |
|---|---|---|---|---|---|---|

| WRK DTE | EMPLEE COUNT | HOURS REPORTED | AMOUNT REPORTED | AMOUNT PAID | ACCOUNTS RECEIVABLE |
|---|---|---|---|---|---|
| 01/06 | 0 | .00 | .00 | .00 | .00 |
| 02/06 | 0 | .00 | .00 | .00 | .00 |
| 03/06 | 0 | .00 | .00 | .00 | .00 |
| 04/06 | 0 | .00 | .00 | .00 | .00 |
| 05/06 | 0 | .00 | .00 | .00 | .00 |
| 06/06 | 3 | 538.00 | 9,162.14 | 9,162.14 | .00 |
| 07/06 | 5 | 677.50 | 12,621.82 | 12,483.81 | 138.01 |
| 08/06 | 7 | 801.00 | 14,922.63 | 14,922.63 | .00 |
| 09/06 | 6 | 891.50 | 16,609.24 | 16,609.24 | .00 |
| 10/06 | 6 | 1,009.00 | 18,797.67 | 18,797.67 | .00 |
| 11/06 | 7 | 838.50 | 15,621.26 | 15,621.26 | .00 |
| 12/06 | 7 | 661.00 | 12,314.43 | 11,569.23 | 745.20 |
| 01/07 | 3 | 138.00 | 2,570.94 | 3,216.14 | 645.20- |
| 02/07 | 4 | 306.00 | 5,700.78 | 5,800.78 | 100.00- |
| 03/07 | 3 | 146.00 | 2,720.10 | 2,720.10 | .00 |

```
[ERS01D3<    E M P L O Y E R    S Y S T E M    I N Q U I R Y THOLLOWAY    08/07/08
02.016              FUNCTION   PLAN    EMPR-NBR   SEQ  START   PAGING PAGE    14:01:44
NEXT-REQUEST :   >ERLIST <   |021<   |092546<   |T< >     < >-    <   42
CURR-REQUEST :   >ERLIST <   [021<   [092546<   [T<
    EMPLOYER :   WIMMER EXCAVATING                         CNTC: 24 NCA SHRT FRM
```

| YTD DUE | 142899.20 | YTD PD | 52331.80 | CURRAR | 90567.40 | LCL: |
|---------|-----------|--------|----------|--------|----------|------|

| WRK | EMPLEE | HOURS | AMOUNT | AMOUNT | ACCOUNTS |
|-----|--------|-------|--------|--------|----------|
| DTE | COUNT | REPORTED | REPORTED | PAID | RECEIVABLE |
| 04/07 | 6 | 692.00 | 12,891.96 | 12,891.96 | .00 |
| 05/07 | 11 | 963.00 | 17,940.69 | 17,940.69 | .00 |
| 06/07 | 17 | 2,255.00 | 42,010.66 | 42,010.66 | .00 |
| 07/07 | 14 | 2,032.50 | 40,568.71 | 40,568.71 | .00 |
| 08/07 | 24 | 2,499.30 | 49,555.05 | 49,555.05 | .00 |
| 09/07 | 21 | 2,972.00 | 58,976.27 | 58,976.27 | .00 |
| 10/07 | 18 | 2,931.50 | 58,220.14 | 48,867.87 | 9,352.27 |
| 11/07 | 17 | 2,225.00 | 44,315.85 | 14,884.83 | 29,431.02 |
| 12/07 | 14 | 1,442.50 | 28,792.30 | 12,071.34 | 16,720.96 |
| 01/08 | 7 | 419.00 | 8,363.24 | 8,363.24 | .00 |
| 02/08 | 0 | .00 | .00 | .00 | .00 |
| 03/08 | 4 | 355.50 | 7,095.78 | 7,095.78 | .00 |
| 04/08 | 12 | 1,076.50 | 21,486.94 | 6,802.95 | 14,683.99 |
| 05/08 | 7 | 1,021.00 | 20,379.16 | .00 | 20,379.16 |

DISPLAY COMPLETE

# EXHIBIT G-2

```
[ERD30DB<              H I S T O R Y  L I S T              THOLLOWAY      08/07/08
01.053              FUNCTION   PLAN   EMPR-NBR  EVENT-DT REC-TYPE   SEQ    14:03:17
NEXT-REQUEST [LD< >LIST   <  | 21<  | 92546<   |    <    | <     | <
CURR-REQUEST [LD< [LIST   <  [ 21<  [ 92546<   [    <    [ <     [ <
EMPR-NAME: WIMMER EXCAVATING                PHONE:    707-678-5896            ATTY
CONTACT:   TERRY WIMMER/OWNER              CITY-ST: VACAVILLE                 CA
CONTRACT:  24 NCA SHRT FRM                 FAX-NBR: 707-678-9290
                  LD-BAL       INT-BAL    LD-AND-INT   PAID-THIS-MO      TOTAL-DUE
PAGING PAGE   44677.28      11854.80     56532.08          .00       56532.08
>+  <   1                                             PROCESS DATE:     08/08
T S                  RBLW
Y E WORK DEP   RCVD   SNTV   PRINCIPAL LIQUIDATED
P Q DATE DATE   DATE  NDRR     OWED    DAMAGES    INTEREST    PAYMENT      TOTAL
1   0699 0999 NO$DOC Z  C    103.60     245.00       3.25        .00        .00
1   0799 0999 NO$DOC Z  C   2025.50     361.80        .00        .00        .00
2            093099     C       .00        .00      16.29        .00        .00
2            103199     C       .00        .00      22.56        .00        .00
1   0999 1199 102899 L  C   3644.58     513.22        .00        .00        .00
2            123099     C       .00        .00      12.48        .00        .00
2            013100     C       .00        .00      12.60        .00        .00
2            022800     C       .00        .00      12.73        .00        .00
2            032900     C       .00        .00      12.87        .00        .00
2            042600     C       .00        .00      13.01        .00        .00
```

```
[ERD30D8<                    H I S T O R Y   L I S T                    THOLLOWAY        08/07/08
01.053                  FUNCTION   PLAN    EMPR-NBR  EVENT-DT REC-TYPE   SEQ     14:05:12
NEXT-REQUEST [LD< >LIST     <   | 21<   | 92546<   |     <      | <     | <
CURR-REQUEST [LD< [LIST     <   [ 21<   [ 92546<   [     <      [ <     [ <
EMPR-NAME: WIMMER EXCAVATING                    PHONE:   707-678-5896               ATTY
CONTACT:   TERRY WIMMER/OWNER                   CITY-ST: VACAVILLE                   CA
CONTRACT:  24 NCA SHRT FRM                      FAX-NBR: 707-678-9290
                   LD-BAL       INT-BAL      LD-AND-INT  PAID-THIS-MO       TOTAL-DUE
PAGING PAGE     44677.28     11854.80      56532.08            .00        56532.08
>-   <   10                                              PROCESS DATE:      08/08
T S                    RBLW
Y E WORK DEP    RCVD    SNTV   PRINCIPAL LIQUIDATED
P Q DATE DATE   DATE    NDRR      OWED       DAMAGES    INTEREST     PAYMENT        TOTAL
2               012607              .00         .00      115.65         .00       115.65
2               022707              .00         .00      116.79         .00       116.79
2               032707              .00         .00      117.98         .00       117.98
2               042607              .00         .00      119.14         .00       119.14
2               052807              .00         .00      120.34         .00       120.34
2               062607              .00         .00      121.54         .00       121.54
2               072607              .00         .00      122.75         .00       122.75
1    0607 0807 080107 L        41712.58     5057.37        .00         .00      5057.37
2               082807              .00         .00      121.18         .00       121.18
2               092807              .00         .00      172.08         .00       172.08
```

```
[ERD30D8<              H I S T O R Y   L I S T              THOLLOWAY      08/07/08
01.053              FUNCTION   PLAN   EMPR-NBR  EVENT-DT REC-TYPE   SEQ    14:04:54
NEXT-REQUEST [LD< >LIST    <  | 21<  | 92546<   |    <      | <     | <
CURR-REQUEST [LD< [LIST    <  [ 21<  [ 92546<   [    <      [ <     [ <
EMPR-NAME: WIMMER EXCAVATING                   PHONE:    707-678-5896           ATTY
CONTACT:    TERRY WIMMER/OWNER                 CITY-ST: VACAVILLE                CA
CONTRACT:   24 NCA SHRT FRM                    FAX-NBR: 707-678-9290
                  LD-BAL        INT-BAL    LD-AND-INT   PAID-THIS-MO      TOTAL-DUE
PAGING PAGE      44677.28     11854.80      56532.08           .00       56532.08
>-   <   11                                             PROCESS DATE:       08/08
T S                    RBLW
Y E WORK DEP   RCVD   SNTV   PRINCIPAL LIQUIDATED
P Q DATE DATE  DATE   NDRR     OWED      DAMAGES    INTEREST     PAYMENT      TOTAL
2             102607             .00         .00     173.81         .00     173.81
1  0907 1107 NO$DOC Z       58325.29     7175.38        .00         .00    7175.38
2             112707             .00         .00     579.03         .00     579.03
1  1007 1107 NO$DOC Z       62960.02     7739.57        .00         .00    7739.57
2             122707             .00         .00    1181.29         .00    1181.29
1  1107 0108 NO$DOC Z       42684.46     5260.15        .00         .00    5260.15
2             012608             .00         .00     781.90         .00     781.90
1  1207 0108 013008 L       28792.30     3582.14        .00         .00    3582.14
2             022608             .00         .00     818.22         .00     818.22
2             032608             .00         .00     895.44         .00     895.44
```

```
[ERD30D8<               H I S T O R Y  L I S T              THOLLOWAY      08/07/08
01.053            FUNCTION   PLAN   EMPR-NBR  EVENT-DT REC-TYPE   SEQ     14:04:34
NEXT-REQUEST [LD< >LIST    <  | 21<  | 92546<  |     <     | <     | <
CURR-REQUEST [LD< [LIST    <  [ 21<  [ 92546<  [     <     [ <     [ <
EMPR-NAME: WIMMER EXCAVATING                   PHONE:   707-678-5896          ATTY
CONTACT:   TERRY WIMMER/OWNER                  CITY-ST: VACAVILLE               CA
CONTRACT:  24 NCA SHRT FRM                     FAX-NBR: 707-678-9290
               LD-BAL        INT-BAL     LD-AND-INT   PAID-THIS-MO      TOTAL-DUE
PAGING PAGE    44677.28     11854.80     56532.08           .00        56532.08
>-  <  12                                               PROCESS DATE:     08/08
T S                    RBLW
Y E WORK DEP   RCVD   SNTV   PRINCIPAL LIQUIDATED
P Q DATE DATE  DATE   NDRR    OWED    DAMAGES    INTEREST    PAYMENT       TOTAL
2              042608          .00       .00      895.10        .00       895.10
1    0308 0408 NO$DOC Z    7095.78    977.55        .00        .00       977.55
2              052808          .00       .00      958.72        .00       958.72
1    0408 0608 062408 Z    6806.36    944.81        .00        .00       944.81
1 1  0408 0608 NO$DOC Z   14680.58   1877.93        .00        .00      1877.93
2              062608          .00       .00     1001.98        .00      1001.98
1    0508 0608 NO$DOC Z   20379.16   2566.12        .00        .00      2566.12
2              072608          .00       .00     1233.11        .00      1233.11
```

                    ALL RECORDS FOR EMPLOYER HAVE BEEN DISPLAYED



such Trust has from time to time been determined, upon the day immediately following the date on which the Individual Employer becomes delinquent, and shall be added to and become a part of said amount due and unpaid, and the whole thereof shall bear interest at the rate of twelve percent (12%) per annum until paid.

*12.13.01* In addition, if a delinquent Individual Employer agrees to pay his delinquency in installments and fails to make such payments in the amount and at the time and place agreed, it is agreed that the amount of damage to each Trust resulting from any such failure shall be by way of liquidated damages and not as a penalty to each such Trust, the sum of thirty-five dollars ($35.00) or fifteen percent (15%) of the amount due and unpaid to each such Trust, whichever is greater, for each such failure to pay in full within the time provided, which amount shall become due and payable to each such Trust in Alameda, California, at the place and time agreed upon, and shall be added to and become a part of said amount due and unpaid, and the whole thereof shall bear interest at the rate of twelve percent (12%) per annum until paid.

*12.13.02* If any Individual Employer defaults in the making of such payments and if either the Union, the Trusts or the plan, or any of them, consults or causes to be consulted legal counsel with respect thereto, or files or causes to be filed any suit or claim with respect thereto, there shall be added to the obligation of the Employer who is in default all reasonable expenses incurred by the Union and the Trust in the collection of same, including but not limited to, reasonable attorneys' fees, auditors' and accountants' fees, court costs and all other reasonable expenses incurred in connection with such suit or claim including any appellate proceedings therein.

*12.13.03* When a contributing Individual Employer has been assessed liquidated damages and interest for a period of two (2) late months during any twelve (12) consecutive month period, upon the occurrence of the second (2nd) assessment the Individual Employer will promptly be notified (with copies to the Local Union and the Employer) that if said Individual Employer becomes delinquent again and is assessed liquidated damages and interest during any of the succeeding twelve (12) -month period, he will be subject to the following rules:

(a) The Individual Employer shall be audited in order to determine compliance with the provisions of this Section 12.00.00 and/or the Trust Fund Documents.

(b) The Individual Employer shall be required to provide the Trust Funds with a cash deposit or bond equal to the sum of the three (3) highest months' contributions made in the immediate preceding twelve (12) -month period, or such lesser sum as the Delinquency Committee deems appropriate.

(c) The Individual Employer's due and delinquent date shall be the 15th day of the month.

(d) Once these special rules have been applied to an Individual Employer, they shall remain in effect for at least twelve (12) months. At the end of this period, the Individual Employer may petition the Board to terminate these special rules and release the cash deposit or bond; this may be allowed only if the Individual Employer has been current in his reports and contributions for each and every month during the preceding twelve (12) -month period and the Board is otherwise satisfied that there will be no further delinquencies. The foregoing rules shall not actually be applied to any Individual Employer until the Delinquency Committee has been advised at a meeting that they have become applicable (or will become applicable if another delinquency occurs). The Delinquency Committee may then, upon its own motion or upon the Individual Employer's request, waive any of the above rules, in whole or in part, for reasonable cause.

*12.13.04* The parties recognize and agree:

(a) that the references to fringe benefits in Sections 7071.5 and 7071.11 of the California Business and Professions Code include payments for fringe benefits and vacation and holiday pay as described in this Agreement and Trust Agreements creating each Trust;

(b) that said payments are for the benefit of the Employees of each Individual Employer covered by this Agreement, and that the failure of an Individual Employer to make said payments, in the manner and at the time prescribed, causes damage to all Employees, including the Employees of the Individual Employer in default, in the amount of the unpaid fringe benefits and vacation and holiday pay as well as the liquidated damages established herein,

